471 P.2d 736

**SCHOOL DISTRICT NO. 3 OF MARI-
COPA COUNTY, Appellant,**

**v.**

**B. B. DAILEY, George R. Sorenson and
Carolyn K. Sorenson, husband
and wife, Appellees.**

**George R. SORENSON and Carolyn K. Sor-
enson, husband and wife,
Cross-Appellants,**

**v.**

**SCHOOL DISTRICT NO. 3 OF MARI-
COPA COUNTY, Cross-Appellee.**

**No. 9883.**

Supreme Court of Arizona,
In Banc.

June 19, 1970.

Moise Berger, Maricopa County Atty., Albert I. Firestein, Chief Civil Deputy County Atty., Phoenix, for appellant and cross-appellee.

Andrews, Marenda & Moseley, by M. B. Moseley, Phoenix, for appellees and cross-appellants.

LOCKWOOD, Chief Justice:

George and Carolyn Sorenson lived in Phoenix, Arizona with their three minor children. They wanted their children to attend school in Tempe Arizona's School District #3 without having to pay tuition. To do so, they had to find a way to avoid

the fiat of A.R.S. § 15–302 which provides that children who do not reside in the district may be admitted upon such terms as the governing board may prescribe. To accomplish their purpose, they relied upon A.R.S. § 15–449, subsec. B which provides that:

"The residence of the person having legal custody of the pupil shall be considered the residence of the pupil * * *."

From this provision they concluded that by having a Tempe resident appointed guardian of their children, they could ipso facto change the children's residence to Tempe, thus making them eligible to attend school there, tuition-free. The parents therefore, procured the appointment of plaintiff, B. B. Dailey, as guardian of the children. Dailey's petition to be appointed guardian, alleged that he had been informed by the children's parents that the Tempe school system had "more to offer" than the system in which the children resided; that therefore it was to their best interests to be permitted to attend school in Tempe; and that if the guardianship were consummated, his residence in Tempe would become the children's residence. The consent of the parents was attached to the petition, and Dailey was appointed guardian of the children on April 11, 1968.

Though Dailey became their guardian, the appointment was in name only and the children continued to reside with, and to be under the control of, their parents. It was, however, the guardian's position that although the parents retained physical custody of the children, the guardianship gave him "legal custody" of them, and that the Tempe school system was thereby required to accept the children without charging any tuition.

The school district did not agree. In order to attain the desired end, the guardian brought this mandamus action against the school district. The district filed a third-party complaint against the parents asking judgment for tuition. The case was tried upon an agreed statement of facts which included the following items: One child attended a Tempe school 1965–1967, and another attended it 1966–1967. Both of them attended the school 1967 to April 29, 1968. In the school year 1968–1969 the third child would become of school age. Attendance of the two children during the above periods took place without the Tempe school district's knowledge that the children resided in Phoenix. When it discovered this fact, it demanded tuition for the period from April 29 to the end of the school year, and the two months' tuition was paid under protest.

The district refused to allow any of the children to attend its school for the 1968–1969 school year unless the parents paid over $1,700 back tuition. It was admitted that the sole purpose of the guardianship was to get the children into the Tempe school system without paying any tuition.

The trial court issued the writ requiring the district to accept the children tuition-free, and the school district appealed.

The pertinent portions of §§ 15–449 and 15–304, A.R.S., the statutes here applicable, read as follows:

"§ 15–449. Admission of pupils of other districts; tuition charges

"A. The board of trustees of a common or high school shall admit pupils from another district or area as follows:

"1. Upon the presentation of a certificate of educational convenience issued by the county school superintendent pursuant to § 15–304 or by agreement between districts, without payment of tuition, to exchange pupils for their convenience for reasons deemed sufficient by the governing boards.

"2. To a high school without the presentation of such certificate, if the pupil is a resident of a common school district within the state which has neither a high school, nor a school in which high school subjects are taught.

"B. The residence of the person having legal custody of the pupil shall be considered the residence of the pupil, ex-

cept as provided by the terms of subsection C of § 15–304.

"C. The attendance of such pupil shall be deemed, for the purpose of determining average daily attendance, and for apportionment of state and county aid, including equalization aid, to be attendance in the district of residence, except as provided by the terms of subsection C of § 15–304.

"D. Tuition shall be charged for all pupils attending school in a district other than that of their residence, as provided in subsections A and B, and shall be determined and paid in the following manner: * * *."

\* \* \* \* \* \*

"§ 15–304. Certificate of educational convenience; Issuance; effect on attendance records

"A. A pupil precluded by distance or lack of adequate transportation facilities from attending a common or high school in the district or county of his residence or who resides in unorganized territory may apply to the county school superintendent for a certificate of educational convenience. If it appears to the superintendent that it is not feasible for the pupil to attend the common or high school in the district or county of residence, he shall issue a certificate authorizing the pupil to attend a common or high school in an adjoining district or county, whether within or without the state. * * *."

"B. In the event of an order issued by the superior court placing the custody or legal guardianship of a child in a rehabilitation or corrective institution, the county school superintendent of the county containing the school district of the pupil's immediate residence shall issue a certificate of convenience for such child to attend a school in the district or adjoining the district containing such corrective institution. * * * Tuition may be charged in the district of actual attendance as for nonresident attendance. * * *."

"C. If a certificate of convenience is issued as provided by the terms of subsection B, or if a child's residence is in doubt because such child has been placed in a foster home by action of the welfare department or the superior court or if the residence of an abandoned or orphaned child is in doubt because his parent or guardian was a transient, the certificate of convenience shall be issued by the county school superintendent. * * Tuition may be charged in the district of actual attendance as for nonresident attendance. * * *."

The guardian contends that subsec. B of § 15–449, supra, is unambiguous. We cannot entirely agree.

■ Sections 1 and 2 of Chapter 134, Laws of 1964, amended §§ 15–304 and 15–449, respectively. Obviously they relate directly to the one subject of "tuition for children attending a common or high school outside of their residence", as expressed in the title. Therefore they must be read together to determine the relationship of one to the other.

Section 15–304 provides a method for permitting pupils residing in one district to attend school in another district without financial loss to the latter. Section 15–449, subsec. B refers to "the person having legal custody of the pupil" as determining the residence of the pupil "except as provided by the terms of subsection C of § 15–304". This reference is to determine the residence for tuition purposes, in the case of children placed in foster homes by the welfare department or by the superior court, or if the residence of an abandoned or orphaned child was in doubt because his parent or guardian was a transient.

■ It is obvious from a reading of these statutes that the Legislature intended that the determination of which school a child is entitled to attend depends upon where the child "resides". A.R.S. § 15–302. That the meaning of the word "reside" or "resident" may differ in the context in which it is used, is well illustrated

in School District No. 16–R, etc. v. Mc-Cormmach, 238 Or. 51, 392 P.2d 1019:

"The words 'resident' or 'residence' are words having various meanings dependent on the context of the statute in which they occur. They must be construed in the light of the purpose of the statute in which they appear and the result sought to be accomplished by their use * * *. Being within the school district boundaries depends not so much on the technical requirements * * * but *upon the physical presence of the child.*" (Emphasis supplied.)

██ The Legislature having provided an elaborate method for permitting school districts to allow transfers of children from one district to another, it is clear that "residence" as used in the various statutes regarding children in the district, refers to actual physical presence of the children. Hence the "legal custody" referred to in § 15–449, supra, presupposes that the children are living within the district, with legal sanction for their presence there. Any other interpretation would be an absurdity, and courts will avoid such an interpretation. City of Phoenix v. Superior Court, 101 Ariz. 265, 419 P.2d 49.

██ Appellees' contention that the general guardianship statute which provides: "The guardian may fix the residence of the ward at any place within the state" (A.R.S. § 14–806) governs, is without merit, since it does not restrict the meaning of "residence" as do the statutes pertaining to children residing in school districts. We therefore decline to agree with the guardian's theory here, as it would lead to a conflict resulting in an absurdity.

It is therefore clear that the children in this case are not entitled to attend school in District No. 3 in which the trial court, by its writ of mandamus, ordered them to be enrolled, without the assent of the District. It is equally clear that the "finding" of the trial court that the legal residence of the children, after the appointment of their guardian, was in District No. 3, was an erroneous conclusion of law.

There remains the question of tuition. The trial court ordered judgment in favor of the district and against the parents for the amount (undetermined) of tuition properly charged for the time prior to the guardian's appointment.

The guardian argues that tuition is not chargeable against out-of-district students. He cites A.R.S. § 15–449, supra, which provides that claims for tuition shall be collected *from the district of residence,* by presentation of the bill by the district of attendance *through the county school superintendent.* The school district argues that it is authorized to collect from the parents, by authority of A.R.S. § 15–302, subsec. B, which provides:

"The governing board may admit children who do not reside in the district but who reside within the state, upon such terms as it prescribes."

██ The statutes may be harmonized by a recognition that the District must admit children residing outside the district under the circumstances described in §§ 15–304 and 15–449, supra, but it may voluntarily accept pupils who live outside the district, but in the state, upon "terms"—i. e. conditions, and a condition might well be the payment of a proper fee for tuition.

The difficulty is that from 1965 to April 1968, no terms were "prescribed". The children attended the school without knowledge by the school that they lived outside its district. From April 1968 to June, 1968 terms were "prescribed" and consisted of payment of tuition for 1965–1968 inclusive. Although the parents probably did not voluntarily agree, they nevertheless paid, probably because they had their choice between paying, or removing the children from school in the middle of the school year. From the 1968–69 and 1969–70 school years, the school accepted the children because of the court writ, and there were no "prescribed" terms.

Since the school was prevented from prescribing terms when the children were admitted by court order, and since otherwise it could, and undoubtedly would have

charged tuition for 1968–70 as for the preceding years, it would seem only proper that judgment be entered against the parents and in favor of the district.

The writ of mandamus issued against School District No. 3 in the instant case is quashed, and the case is remanded to the superior court for proceedings designed solely to determine the amount due from the third party defendants George and Carolyn Sorenson, to School District No. 3 and for entry of judgment for the proper amount.

STRUCKMEYER, V. C. J., and UDALL, McFARLAND and HAYS, JJ., concur.