852 P.2d 1223

**Ruben FERNANDEZ, Plaintiff/Appellee,**

v.

**STATE PERSONNEL BOARD, Department of Corrections, and Samuel Lewis, Director, Defendants/Appellants.**

No. 2 CA–CV 92–0007.

Court of Appeals of Arizona,
Division 2, Department B.

Sept. 22, 1992.

Reconsideration Denied Oct. 21, 1992.

Review Denied June 15, 1993.*

William L. Tifft, Globe, for plaintiff/appellee.

Grant Woods, Atty. Gen. by Kathryn J. Winters, Paula S. Bickett and Patricia Kimmel, Rule 38 Law Student, Phoenix, for

---

* Feldman, C.J., and Zlaket, J., of the Supreme Court, voted to grant review.

defendants/appellants Dept. of Corrections and Samuel Lewis, Director.

## OPINION

DRUKE, Presiding Judge.

In this appeal we must decide the constitutionality of that portion of A.R.S. § 41–772 which prohibits all but certain state employees from being elected "to any paid public office" or holding "any paid, elective public office." This constitutional dispute arises from the following factual and procedural setting.

Appellee Ruben O. Fernandez was hired by the Arizona Department of Corrections (DOC) as a Correctional Service Officer in September 1986. Although he worked in Florence, Arizona, Fernandez lived in Superior, Arizona, along with 100 other DOC employees. Superior is a community of 4,000 to 4,600 people, of whom approximately 1,000 are registered voters.

After Fernandez was hired, he ran for and was elected to the Superior town council, a nonpartisan elective position paying $50.00 per month. Before he was elected, Fernandez was advised by the town's attorney of the statutory prohibition in issue here against a state employee being elected to or holding a paid public office. In June 1989, Fernandez was chosen by the other council members to be the town's mayor, a nonpartisan position paying $150.00 per month. Shortly thereafter, he was dismissed from his employment with the DOC when its director became aware of Fernandez's mayoral position. Fernandez's dismissal was based solely on the statutory prohibition *sub judice*, not his job performance.

Fernandez appealed unsuccessfully to the personnel board, *see* A.R.S. § 41–785, and then sought judicial review in superior court. *See* A.R.S. §§ 12–901 through 12–914. The court ordered that Fernandez be reinstated, holding the statutory prohibition in question "to be unconstitutional in its applicability to small towns and rural communities...."

▮ Statutes are presumed to be constitutionally valid. *Stirewalt v. P.P.G. In-* *dustries, Inc.*, 138 Ariz. 257, 674 P.2d 320 (App.1983). To declare otherwise "is a drastic measure, and the court should do so only where clearly necessary." *State v. Swainston*, 139 Ariz. 95, 96, 676 P.2d 1153, 1154 (App.1984). The party seeking such a declaration bears "the burden of proving that the statute infringes upon a constitutional guarantee or violates some constitutional principle." *Stirewalt*, 138 Ariz. at 259, 674 P.2d at 322. That burden is unsatisfied here and thus, we reverse.

A.R.S. § 41–772 is patterned after the federal Hatch Act. *See* 5 U.S.C. §§ 7324–7327. The Hatch Act was found to be constitutional and not violative of the First or Fourteenth Amendments in *U.S. Civil Service Commission v. National Association of Letter Carriers, AFL–CIO*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). Adopting a balancing test in *Letter Carriers*, the Court held that government may place limits on partisan activities by its employees if the employees' constitutional rights are outweighed by the governmental interests to be served. *See also Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Many of the governmental interests identified in *Letter Carriers* are served by that portion of A.R.S. § 41–772 under consideration here.

First, it enhances a government work force of efficient, apolitical employees, a primary governmental interest recognized in *Letter Carriers*. "[Federal employees] are expected to enforce the law and execute the programs of the Government without bias or favoritism for or against any political party or group or the members thereof." *Letter Carriers*, 413 U.S. at 565, 93 S.Ct. at 2890. No less can be expected of state employees; they, too, are expected to serve without bias or favoritism. Moreover, it is not germane that there is an absence, as in this case, of any actual bias or favoritism. Such vices are often covert, thereby posing a sufficient threat to the efficiency and effectiveness of government to warrant the prophylactic ban embodied in A.R.S. § 41–772.

Second, the challenged statutory prohibition advances not just impartiality in fact, but also the appearance of impartiality, another important governmental interest identified in *Letter Carriers*. As the Court observed, "it is not only important that the Government and its employees in fact avoid practicing political justice, but it is also critical that they appear to the public to be avoiding it, if confidence in the system of representative Government is not to be eroded to a disastrous extent." *Id.* Such erosion of public confidence appears to have been present in the instant case. Fernandez's dismissal was precipitated in part by complaints to the DOC from two of Superior's citizens.

Finally, notwithstanding the superior court's legitimate concern that the statutory proscription in issue might "take away the voice of the people" by disqualifying a significant portion of the voters for public office in a small rural community such as Superior, where ten percent of the registered voters are state employees, the proscription is nevertheless amply supported by two countervailing and equally legitimate governmental concerns identified in *Letter Carriers:* the avoidance of a powerful political machine and the assurance of employee advancement based on merit. It takes little imagination to envisage 100 DOC employees in a community of 1,000 registered voters becoming a powerful voting block, with employee advancement being dependent upon one's political affiliation or vote.

Moreover, simply because the public office bears, as here, a nonpartisan label does not diminish the need for the statutory proscription. The art of politics is not necessarily confined to easily identified political parties. As the court found in *Magill v. Lynch*, 560 F.2d 22 (1st Cir.1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1236, 55 L.Ed.2d 763 (1978), where it upheld a city charter which prohibited the candidacy of its employees for the city's nonpartisan offices:

> The city could reasonably fear the prospect of a subordinate running directly against his superior or running for a position that confers great power over

his superior.... The possibilities of internal discussion, cliques, and political bargaining, should an employee gather substantial political support, are considerable.

*Id.* at 29. Illustrative of such possibilities is Fernandez's own testimony at the hearing in this case:

> I ran [for town council] under the assumption or the belief that I would be able to help the town of Superior because I do know some people in—I'm also including [the director] Mr. Lewis, and I know some of the other people in offices and everything, congressmen, everything, and some of the possibilities since I have been in office we have achieved ... we have obtained a senior center, we have obtained a community park.

In summary, the challenged portion of A.R.S. § 41–772 does not violate a state employee's constitutional rights under the First or Fourteenth Amendments. It strikes a permissible balance between the employee's constitutional rights and the rightful interest of the state that its

> government programs be administered in an unbiased manner and without favoritism for or against any political party or group or any member in order to promote public confidence in government, governmental integrity and the efficient delivery of governmental services....

A.R.S. § 41–772(L). Where, as here, there is a *reasonable, but perhaps debatable* basis for the statute's enactment, it will be upheld unless it is clearly unconstitutional. *State v. Ramos*, 133 Ariz. 4, 648 P.2d 119 (1982).

Furthermore, to pass constitutional muster, the statute need not be strictly scrutinized as Fernandez urges, citing *Mancuso v. Taft*, 476 F.2d 187 (1st Cir.1973). *Mancuso* was effectively overruled by *Letter Carriers*. *Magill, supra*. *See also Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Burdick v. Takushi*, —— U.S. ——, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).

Finally, the statutory prohibition is not unconstitutionally overbroad as Fer-

**42**

nandez contends. He first argues that its overbreadth is shown by the fact that it applies to nonpartisan public offices. However, as previously noted, its application to the nonpartisan mayoral position is justified. As the court observed in *Wachsman v. City of Dallas*, 704 F.2d 160, *reh'g denied*, 710 F.2d 837 (5th Cir.), *cert. denied*, 464 U.S. 1012, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983):

> [S]ignificant operating relationships frequently exist within the geographical area of a city, between the city government, whether partisan or not, and the county, state and federal governments. City politics, then, whether or not "partisan" cannot be viewed as wholly divorced from the politics, within the area of the city, of the local, state, and federal government.

*Id.* at 171. Moreover, that a different result may be required when the statutory prohibition is applied to other nonpartisan paid public offices is not determinative. It is a well-settled principle of constitutional adjudication that "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick*, 413 U.S. at 610, 93 S.Ct. at 2915. For the same reason, Fernandez's second overbreadth argument must fail. Although the statute does not define the phrase "paid public office," Fernandez's mayoral position unquestionably falls within its common, ordinary definition. That it may be unconstitutional as applied to other positions does not make it unconstitutional here. *Id.*

Accordingly, the superior court's order reinstating Fernandez is vacated and his dismissal by the DOC is affirmed.

FERNANDEZ and HATHAWAY, JJ., concur.