865 P.2d 814

**Michael L. PATTERSON, Plaintiff–Appellee,**

v.

**MARICOPA COUNTY SHERIFF'S OFFICE, Maricopa County Sheriff, Thomas J. Agnos, and Maricopa County Employee Merit System Commission, Defendants–Appellants.**

No. 1 CA–CV 91–0136.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 16, 1993.

Bryan, Cave, McPheeters & McRoberts by Marshall W. Anstandig, Diane M. Dear, Teresa D. Forst, Phoenix, for defendants-appellants.

Brown & Bain, P.A. by Paul F. Eckstein, Joel W. Nomkin, Hugh L. Hallman, Phoenix, for plaintiff-appellee.

## OPINION

LANKFORD, Judge.

This appeal presents the following issues:

1. Did the Maricopa County Employee Merit System Rules bar Appellee Michael L. Patterson, an employee of Appellant Maricopa County Sheriff's Office, from a candidacy for municipal office?

2. Is Maricopa County Employee Merit System Rule 20 unconstitutional?

We hold that because the office was unpaid and nonpartisan, the County rules did not prevent Patterson from both being a candidate for the position and continuing in his county job. As a result, we need not reach the constitutional question.

Patterson was employed by the Sheriff's Office as a detention officer. In January 1989, Patterson filed nominating petitions for the position of Cave Creek Town Council representative, an unpaid and nonpartisan position.

Patterson's employment was governed by the Maricopa County Employee Merit System Rules ("the Rules"). Section 20 of the Rules [1] provides in part:

B. No employee shall be a member of any national, state or local committee of a political party, or an officer or chairman of a committee of a partisan political club, or

1. The provisions of Maricopa County Merit Rule 20B, C and D are virtually identical to former Ariz.Rev.Stat.Ann. ("A.R.S.") section 41-772B, C and D (1985), which applied to state employees. The statute was amended in 1991.

a candidate for nomination or election to any paid public office, or shall take any part in the management or affairs of any political party or in any political campaign, except that any employee may express opinions, attend meetings for the purpose of becoming informed concerning the candidate for public office and the political issues and cast a vote.

C. The provisions of this section shall not apply to school board elections or junior college district governing board elections, and an employee or commissioner may serve as a member of the board of trustees of a common or high school district or as a member of the junior college district governing board.

D. Any person in the county service who violates any of the provisions of this section shall be subject to suspension of not less than thirty days or dismissal.

Prior to the Cave Creek general election, the Sheriff's Office learned of Patterson's candidacy and conducted an investigation to determine whether it violated the Rules proscribing political activity. The investigators concluded that Patterson was not violating Rule 20B because the position he sought was unpaid and nonpartisan. However, the Director of Detention and a Deputy Chief disagreed with this conclusion, as did Appellant Sheriff Agnos and the Maricopa County Attorney's Office.

Patterson was elected in May 1989 to the Cave Creek Town Council. Shortly thereafter, Agnos informed Patterson by letter of Agnos' intent to terminate Patterson's employment for engaging in improper political activity in violation of the Rules. The letter asserted that Patterson not only violated the Rules by serving as a town council representative but created a potential conflict of interest because the Sheriff's Office had contracted with the Town of Cave Creek to provide law enforcement service.

At Patterson's request, a pre-termination meeting was held. Agnos advised Patterson that if he would resign his elected position on the town council, the Sheriff's Office would not terminate his employment.

Patterson did not resign, and by letter dated June 23, 1989, Agnos terminated Patterson's employment with the Sheriff's Office. Agnos cited the legal causes for dismissal as violation of Rule 17(c)(13) ("improper political activity") and Rule 20B ("participation in political campaign"). Rule 17C provides: "An appointing authority may remove any employee with permanent status only for cause. Each of the following constitutes cause for discipline or dismissal of an employee in the county service: . . . 13. Improper political activity." Rule 20 defines political activity.

Patterson appealed his dismissal to the Maricopa County Employee Merit System Commission, which denied his appeal. He subsequently filed a superior court action challenging the Commission's order. He sought reinstatement to his former job, back wages and other benefits, damages under 42 U.S.C. section 1983 and a declaratory judgment that Rule 20B was unconstitutional under the First Amendment to the United States Constitution and Article 2, section 6 of the Arizona Constitution.[2]

Patterson filed a motion for partial summary judgment on liability and appellants ("the County") filed a response and cross-motion for summary judgment. The trial court granted Patterson's motion and denied the County's cross-motion. The court resolved the motions by referring to Rule 20B without resolving the underlying constitutional issues. The court stated:

In this case, the word "paid" in line 3 of Section 20B would have *no meaning if* the defendants' theory of the case prevailed. We must assume that the legislature intended the word to have some meaning or else it would not have been used. In addition, where a statute is plain on its face, it would be inappropriate to refer to legislative history to alter the plain and literal meaning of its words.

---

**2.** "Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right." Ariz. Const. art. II, § 6.

**156**

The County filed a timely notice of appeal from the judgment in favor of Patterson.[3]

■ The facts in this matter are not in dispute. The only issue is the proper interpretation of Rule 20B. The interpretation of a statute or rule involves legal rather than factual questions; thus, we are not bound by the trial court's construction of the rule, and we consider *de novo* the rule and its application to the facts before us. *See Hampton v. Glendale Union High Sch. Dist.*, 172 Ariz. 431, 433, 837 P.2d 1166, 1168 (App.1992) (interpreting statute); *Libra Group, Inc. v. State*, 167 Ariz. 176, 179, 805 P.2d 409, 412 (App.1991) (interpreting statutes and regulations).

■ We look first to the language of the rule. Rule 20B provides in relevant part that "[n]o employee shall be ... a candidate for nomination or election to any *paid* public office, or shall take part in the management or affairs of any political party or in any political campaign ..." (Emphasis added).

This rule can be read in three ways: (1) Because an employee may not take part in any campaign, he may not be a candidate for any office involving a campaign; (2) An employee may be a candidate for an unpaid position, but he may not participate in his own campaign; or (3) An employee may be a candidate for unpaid office and he may take part in his own campaign. We believe that the third reading of the rule is correct. Thus, the rule allowed Patterson to campaign as a candidate for the town council.

■ The first interpretation of the rule would make the prohibition against running for a *paid* public office meaningless. If a county employee cannot campaign as a candidate for *any* office, paid or unpaid, then the ban on candidacy for a *paid* office would be superfluous. In construing a statute or rule, we presume that the promulgating body did not intend to do a futile act by including a provision that is not operative or that is inert and trivial. *See Campbell v. Superior Ct.*, 105 Ariz. 252, 255, 462 P.2d 801, 804 (1969) (construing statute). We must give each word, phrase, clause and sentence meaning

so that no part of the rule is rendered superfluous, void, insignificant, redundant or contradictory. *See State v. Superior Ct.*, 113 Ariz. 248, 249, 550 P.2d 626, 627 (1976); *Maricopa County v. Arizona Tax Ct.*, 162 Ariz. 64, 68, 781 P.2d 41, 45 (App.1989) (construing statutes). We therefore reject an interpretation of the rule which prohibits employees from participating in their own campaigns because that construction would render an important clause of the rule nugatory. The second alternative would allow an employee to be a candidate for unpaid office, but prohibit participation in the employee's own campaign. We reject an interpretation that limits employees to such "passive" candidacies. An integral part of candidacy for public office is the waging of a campaign to be elected. It is through campaigns—speeches, brochures, voter canvassing—that the electorate is informed of the qualifications and views of a candidate. Disallowing campaign activity not only places the candidate at an acute disadvantage, but disserves the public as well. Moreover, the County has never offered any persuasive policy reason for distinguishing passive and active candidacies. It would not be a sensible construction of the rule to allow an employee to be a candidate, but disallow his participation in the attendant campaign for election. "Statutes must be given a sensible construction which will avoid absurd results." *Lake Havasu City v. Mohave County*, 138 Ariz. 552, 557, 675 P.2d 1371, 1376 (App.1983) (*citing School Dist. No. 3 of Maricopa County v. Dailey*, 106 Ariz. 124, 471 P.2d 736 (1970) and *St. Joseph's Hosp. and Medical Ctr. v. Maricopa County*, 130 Ariz. 239, 635 P.2d 527 (App.1981)).

We embrace the third interpretation as the most reasonable reading of Rule 20. That interpretation allows an employee to both stand for an unpaid office and campaign for that office. Other jurisdictions have considered similar provisions and have concluded, as we do, that limits on employee participation in campaigns do not control provisions regarding candidacies of the employees themselves.

---

**3.** The trial court included language in its partial summary judgment order which renders the

judgment appealable under Arizona Rule of Civil Procedure 54(b).

In *Magill v. Lynch,* 560 F.2d 22 (1st Cir. 1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1236, 55 L.Ed.2d 763 (1978), one provision of a city charter banned both partisan and non-partisan candidacies while another prohibited employees from taking part in political campaigns. The court believed that "[i]n the light of the more specific prohibition of candidacy, ... we doubt that this provision [banning campaigning] was meant to cover candidates." 560 F.2d at 29 n. 6; *see also Mancuso v. Taft,* 476 F.2d 187, 189 n. 1. (1st Cir. 1973) (subsection of city charter banning city employees from taking part in any political campaign did not apply to employee candidates in light of broader subsection prohibiting city employees from candidacies for nomination or election to any public office).

We agree with this reasoning. The only way to honor the language of both provisions in Rule 20B is to conclude that they cover separate matters: the first clause applies when the employee is a candidate, and the second governs employee involvement in the campaigns of others. Because Rule 20B does not prohibit employees from running for unpaid office, Patterson's candidacy for the town council did not violate the ban on campaign activity.

■ The Rule 20C exemption of school board and junior college governing board elections does not alter our analysis. This clause exempts such elections from all of the proscriptions of Rule 20. Thus, public employees may participate in the campaigns of others for such offices, and may themselves stand as candidates regardless of whether these offices are paid or unpaid.[4] Rule 20C therefore is consistent with the remainder of the rule as we have interpreted it.

Moreover, the exemption of school board and junior college governing board elections is consistent with the policy behind the rule: the avoidance of public employee entanglement in partisan political activities. This exemption may be an attempt to provide a non-exclusive example of allowable nonpartisan political activity. In interpreting the federal Hatch Act, the Fourth Circuit stated that:

> [T]he legislative design of 5 U.S.C. § 1503 ... permits state employees subject to the [Hatch] Act to engage in *nonpartisan* political activity, and even to run for elective offices provided those offices and activities are strictly local in nature and completely unrelated to issues and candidates that are identified with national or state political parties. The prime example of such a permissible activity might be running for a nonpartisan local school board.

*Northern Virginia Regional Park Auth. v. United States Civil Serv. Comm'n,* 437 F.2d 1346, 1352 (4th Cir.), *cert. denied* 403 U.S. 936, 91 S.Ct. 2254, 29 L.Ed.2d 717 (1971). Because abstract line-drawing between partisan and nonpartisan activity is difficult, *see* Op.Ariz., Att'y Gen. I83–134 at 5, the framers of the Rules may have provided this exemption as such an example of an obvious instance of nonpartisan political activity.

■ Our interpretation of the various parts of Rule 20 not only results in a harmonious whole but appears to best serve its purposes. "The cardinal rule of statutory interpretation is to determine and give effect to the legislative intent behind the statute." *Calvert v. Farmers Ins. Co. of Arizona,* 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985) (*citing Phoenix Title & Trust Co. v. Burns,* 96 Ariz. 332, 395 P.2d 532 (1964) and *Payne v. Knox,* 94 Ariz. 380, 385 P.2d 514 (1963)). In determining legislative purpose, we look to the policy behind an enactment and the problem it was designed to remedy. *Calvert,* 144 Ariz. at 294, 697 P.2d at 687. We will also examine "the words, context, subject matter, and effects and consequences of the statute." *Id. (citing State ex rel. Flournoy v. Mangum,* 113 Ariz. 151, 548 P.2d 1148 (1976)).

According to the United States Supreme Court, limitations on political activity serve at least four interests: (1) They enable government employees to enforce the law and

---

**4.** Although appellants assume that all school board positions in Maricopa County are unpaid, the record does not inform us on this point. *See also* Op.Ariz.Att'y Gen. 71–32–L (school boards are an exception to the ban on holding paid political office; interpreting former A.R.S. section 38–931, now section 41–772). Even if these positions are unpaid, Rule 20C assures county employees that they may seek such offices even if they become paid positions at a later date.

execute government programs without bias or favoritism for or against any political party or group; (2) They instill public confidence in government by avoidance of even the appearance of "political justice"; (3) They prevent the government work force from being employed to build a political machine; and (4) They prevent political performance from being a factor in the employment and advancement of government employees and free public employees from pressure to vote in a certain way or perform political chores to curry favor. *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, AFL–CIO,* 413 U.S. 548, 564–66, 93 S.Ct. 2880, 2890–91, 37 L.Ed.2d 796 (1973).

In *Letter Carriers,* the Supreme Court upheld the constitutionality of 5 U.S.C. section 7324(a)(2), part of the Hatch Act. 413 U.S. at 568, 93 S.Ct. at 2892. That provision prohibits federal employees from taking "an active part in political management or in political campaigns." 5 U.S.C. § 7324(a)(2) (1988). The Court noted that the Act exempts nonpartisan political activities. 413 U.S. at 576, 93 S.Ct. at 2896. Nonpartisan political activities do not endanger the public interests articulated in *Letter Carriers.*

Exemptions to political activity limitations also serve several purposes. First, such exemptions provide government employees with a means to exercise their First Amendment right of expression. Exemptions also free employees to be involved in the political process. Moreover, because ballot access restrictions tend to limit the pool of candidates from which voters may choose, *see Anderson*

*v. Celebrezze,* 460 U.S. 780, 786, 103 S.Ct. 1564, 1568, 75 L.Ed.2d 547 (1983) and *Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972), exemptions increase the pool of candidates.

The Arizona Legislature has also made state employees subject to limitations similar to the county rule.[5]

The Legislature set forth the public policy underlying this provision:

L. It is the public policy of this state ... that government programs be administered in an unbiased manner and without favoritism for or against any political party or group or any member in order to promote public confidence in government, governmental integrity and the efficient delivery of governmental services and to ensure that all employees are free from any express or implied requirement or any political or other pressure of any kind to engage or not engage in any activity permitted by this section.

A.R.S. § 41–772(L) (1992).

Our reading of the Rules strikes an appropriate balance between employees' First Amendment rights and the interests of government in avoiding political patronage. " 'The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Letter Carriers,* 413 U.S. at 564, 93 S.Ct. at 2890 (*quoting Pickering v. Board of Educ.,* 391 U.S.

---

5. A.R.S. section 41–772(B) provides that:

B. An employee or member of the personnel board shall not be a member of any national, state or local committee of a political party, an officer or chairman of a committee of a partisan political club, or a candidate for nomination or election to any paid public office, shall not hold any paid, elective public office or shall not take any part in the management or affairs of any political party or in the management of any partisan or nonpartisan campaign or recall effort, except that any employee may:
1. Express his opinion.
2. Attend meetings for the purpose of becoming informed concerning the candidates for public office and the political issues.
3. Cast his vote and sign nomination or recall petitions.

4. Make contributions to candidates, political parties or campaign committees contributing to candidates or advocating the election or defeat of candidates.
5. Circulate candidate nomination petitions or recall petitions.
6. Engage in activities to advocate the election or defeat of any candidate.
7. Solicit or encourage contributions to be made directly to candidates or campaign committees contributing to candidates or advocating the election or defeat of candidates.

A.R.S. § 41–772(B) (1992).

A.R.S. section 41–772 is patterned after the Hatch Act, 5 U.S.C. sections 7324–7327 (1988).

563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)).

The Rules are an example of this type of balancing. By prohibiting some types of political activity and allowing others, the Rules promote fair government while allowing government employees to participate in the political process. Moreover, the interests articulated by the Supreme Court and the Arizona Legislature are not violated by our reading of the rule. Because the position is nonpartisan, there is no danger of bias or favoritism for or against any political party or group, nor any danger of the appearance of "political justice." By restricting the offices which county employees may hold to unpaid, nonpartisan offices, there is no reason to fear political machine-building.

Finally, this restriction on the type of office which an employee may hold greatly reduces the likelihood that public employees will be subject to pressure to either vote in a particular way or perform political chores. Under our interpretation, a county employee may not participate in any campaign except his own. This prevents coerced participation in the campaigns of others, particularly superiors.

We note that any potential conflict of interest between Patterson's employment and his public office can be addressed by means other than forbidding his candidacy. The county may have or adopt anti-corruption rules and laws, and the town may have or adopt anti-corruption and conflict of interest recusal rules and laws. In fact, the record shows that the Town of Cave Creek prohibits Town Council members from participating in Council activity on an issue which presents a conflict of interest. Moreover, the Arizona Legislature has adopted a provision which, if not directly applicable to a county employee or town council member, at least illustrates the availability of other measures. A.R.S. section 38–503 prohibits conflict of interest in public employment.[6]

■ We do not reach Patterson's arguments that the rule is unconstitutional. We will avoid constitutional questions when other principles of law are controlling. *Nunez v. Arizona Milling Co.,* 7 Ariz.App. 387, 389, 439 P.2d 834, 836 (1968); *Blaylock v. United States Merit Sys. Protection Bd.,* 851 F.2d 1348, 1357 (11th Cir.1988). We are not alone in our desire to avoid the constitutional question. The federal courts have also avoided the question of whether limits on political activity apply to nonpartisan activities. "To the extent that the Hatch Act is construed to apply to nonpartisan activities, we would face a constitutional question our courts have avoided for forty years." *Bauers v. Cornett,* 865 F.2d 1517, 1524 (8th Cir.1989). Our interpretation of the rules avoids any doubt as to constitutionality, at least on the vagueness and First Amendment grounds available to this plaintiff.

Moreover, because we have found that the rule did not prevent Patterson from running for the unpaid town council position, he is not adversely affected by the rule, and we need not consider his assertion that it is unconstitutional. *See State v. Herrera,* 121 Ariz. 12, 15–16, 588 P.2d 305, 308–09 (1978), *cert. denied* 441 U.S. 949, 99 S.Ct. 2175, 60 L.Ed.2d 1054 (1979) (to have standing to assert a constitutional challenge, an individual must have suffered some injury from the putatively illegal action such that he has a personal stake in the outcome of the controversy).[7]

---

**6.** That section reads in part as follows:

A. Any public officer or employee of a public agency who has, or whose relative has, a substantial interest in any contract, sale, purchase or service to such public agency shall make known that interest in the official records of such public agency and shall refrain from voting upon or otherwise participating in any manner as an officer or employee in such contract, sale or purchase.

B. Any public officer or employee who has, or whose relative has, a substantial interest in any decision of a public agency shall make known such interest in the official records of such public

agency and shall refrain from participating in any manner as an officer or employee in such decision.

A.R.S. § 38–503 (Supp.1992).

**7.** We also note that the court in *Fernandez v. State Personnel Bd.,* 175 Ariz. 39, 852 P.2d 1223 (App.1992), held that A.R.S. section 41–772 is constitutional in its provision that prohibits all but certain state employees from being elected "to any paid public office" or holding "any paid, elective public office." The *Fernandez* court primarily based its holding on *United States Civil Service Comm'n v. National Ass'n of Letter Carri-*

Because Rule 20 did not prohibit Patterson from campaigning for and holding the office of Cave Creek Town councilman, we affirm the summary judgment in his favor.

GRANT, P.J., and CONTRERAS, J., concur.

*ers, AFL–CIO,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), which upheld the constitutionality of the Hatch Act, and *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), which held that a state law patterned on the Hatch Act was constitutional.