864 P.2d 1072

**Joseph R. GUERTIN and Mary Guertin, husband and wife; Allen B. Kimball and Marion Kimball, husband and wife; Frank Brogni, Jr., an unmarried man; Leonard R. Fletcher and Betty M. Fletcher, husband and wife; Charles Oldham and Margot Oldham, husband and wife; John L. Lauterbach and Eloise L. Lauterbach, husband and wife; the Estate of Gerald Mickel, Plaintiffs/Appellants/Cross–Appellees,**

v.

**Ronald W. DIXON and Shawnee M. Dixon, husband and wife; David Dixon and Maria Dixon, husband and wife; Richard W. Dixon and Eunice E. Dixon, husband and wife, dba Quail Ridge Estates; R.D. Mobile Homes, Inc., a California corporation, Defendants/Appellees/Cross–Appellants.**

**No. 2 CA–CV 92–0137.**

Court of Appeals of Arizona, Division 2, Department B.

June 15, 1993.

Review and Cross–Petition for Review Denied Jan. 11, 1994.

Whitehill, West, Rowland, Christoffel & Zickerman by Neil J. Konigsberg, Tucson, for plaintiffs/appellants/cross-appellees.

King, Frisch & Allen, P.C. by James C. Frisch, Tucson, for defendants/appellees/cross-appellants.

Parham & Cox by Michael A. Parham, Phoenix, for amicus curiae Arizona Mobile Housing Ass'n, Inc.

## OPINION

FERNANDEZ, Judge.

Appellants, a group of lessees at Quail Ridge Estates mobile home park in Pima County, appeal from the trial court's summary judgment ruling that the statute of limitations precludes their cause of action for a violation of the Arizona Mobile Home Parks Residential Landlord and Tenant Act, A.R.S. §§ 33–1401 through 33–1491. Appellees, the owners and/or managers of Quail Ridge, have cross-appealed from the court's ruling that the subpart at issue applies to all tenants living in the park, past, present, and future. We agree in part with the court's conclusion on the applicability of the statute and affirm as to its ruling on the statute of limitations.

Appellants' complaint alleged that appellees' requirement that each tenant at Quail Ridge construct certain improvements on his or her leased premises violates § 33–1452(D)(6) of the Act. The required improvements are full-length wood awnings on both sides of the mobile home, a raised cement or wood porch at least eight feet by twenty feet, a slump stone skirting or ground level set, and a storage room at least eight feet by twelve feet that has the same siding

as the mobile home. Subpart (6) of § 33–1452(D) prohibits a landlord from requiring tenants to furnish permanent improvements that cannot be removed without damaging either the improvements or the park space.

## APPLICABILITY OF STATUTE

■ We note initially that the trial court's ruling is broader than is required here. Because appellants are all existing tenants whose leases commenced sometime between 1985 and 1990, we address only that portion of the court's ruling that holds that the Act is applicable to present tenants. Whether it also applies to past and future tenants is an issue we leave for another day.

■ "The cardinal rule of statutory construction is to ascertain the meaning of a statute and the intent of the legislature at the time the legislature acted." *Kriz v. Buckeye Petroleum Co.*, 145 Ariz. 374, 377, 701 P.2d 1182, 1185 (1985). In determining the legislative intent of a statute, we consider "the context of the statute, the language used, the subject matter, the historical background, the effects and consequences, and the spirit and purpose of the law." *Martin v. Martin*, 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988). Because the interpretation of the statute is the only issue before us, our review is de novo. *Chaffin v. Commissioner of Arizona Department of Real Estate*, 164 Ariz. 474, 793 P.2d 1141 (App.1990).

The Arizona Mobile Home Parks Residential Landlord and Tenant Act was enacted in 1975. Its stated purposes are: "To simplify, clarify and establish the law governing the rental of mobile home spaces and rights and obligations of landlord and tenant[, and] ... [t]o encourage landlord and tenant to maintain and improve the quality of mobile home housing." A.R.S. § 33–1402. There is no pertinent case law to assist us in our interpretation of the statute.

The section involved here, § 33–1452, among other things, requires a landlord to adopt written rules or regulations "concern-

ing the tenant's use and occupancy of the premises." Such rules are required to apply to all tenants, be sufficiently explicit to inform the tenant about his or her expected conduct, not be designed to evade the landlord's obligations, and be reasonably related to purposes such as promoting the convenience, safety, or welfare of tenants and preserving or upgrading the mobile home park. § 33–1452(A). All prospective tenants must be given a copy of the rules before they sign rental agreements. § 33–1452(A)(6). The section also requires new tenants to comply with existing park rules. § 33–1452(B). In addition, when a landlord changes the rules, he or she must notify the tenants of the changes thirty days before they become effective, and changes that constitute substantial modifications to existing rental agreements are not enforceable against existing tenants. § 33–1452(C).

In order to analyze subpart (D)(6), we examine it in the context of the entire subsection of which it is a part. Subsection D reads in full as follows:

A person who owns or operates a mobile home park shall not:

1. Deny rental unless the mobile home is not compatible with the other mobile homes in the park or does not meet the requirements of the statements of policy prescribed pursuant to § 33–1436 or the park resident or prospective resident cannot conform to park rules and regulations.

2. Require any person as a precondition to renting, leasing or otherwise occupying a space for a mobile home in a mobile home park to pay an entrance or exit fee of any kind unless for services actually rendered or pursuant to a written agreement.

3. Deny any resident of a mobile home park the right to sell his mobile home at a price of his own choosing during the term of the tenant's rental agreement, but the landlord may reserve the right to approve the purchaser of such mobile home as a tenant but such permission may not be unreasonably withheld, except that the landlord may require, in order to preserve

or upgrade the quality of his mobile home park, that any mobile home not compatible with the other mobile homes in the park or in a rundown condition or in disrepair be removed from the park within sixty days.

4. Exact a commission or fee with respect to the price realized by the tenant selling his mobile home, unless the park owner or operator has acted as agent for the mobile home owner pursuant to a written agreement.

5. Require a tenant or prospective tenant to use any specific sales agency.

6. Require a tenant to furnish permanent improvements which cannot be removed without damage thereto or to the mobile home space by a tenant at the expiration of the rental agreement.

7. Prohibit a tenant from advertising the sale or exchange of his mobile home, including the display of a sign in the window of the mobile home stating the name, address and telephone number of the owner of the mobile home or his agent. The sign may be no larger than twelve inches wide and eighteen inches long. In addition to the display of a sign in the window, the tenants may display the signs on a central posting board in the park which is reasonably accessible to the public seven days a week during daylight hours.

Subparts (1) through (4) and (6), with some changes in wording, have been part of the Act since 1975. Subpart (5) was added in 1987 and (7) was added in 1981.

Appellees contend that § 33–1452(D)(6) applies only to tenants who were residents of a mobile home park at the time the Act was adopted and to tenants whose landlord substantially modifies a lease without the tenants' consent. As support for their argument, appellees note that the Act provides:

As a condition of tenancy the rental agreement may require the prospective tenant to make improvements to the mobile home, including all appurtenances owned by the tenant, to preserve or upgrade the quality of the mobile home park even if the prospective tenant is purchas-

ing a home already located in the mobile home park. The improvements shall not exceed the requirements of the rules or regulations of the mobile home park.

A.R.S. § 33–1413(J). Appellees also cite the following definitions in the Act:

'Appurtenances' means awnings, sheds, porches and other attachments to the mobile home.

\* \* \* \* \* \*

'Prospective tenant' means a person who desires to become a tenant.

\* \* \* \* \* \*

'Tenant' means a person signing a rental agreement or otherwise agreeing with a landlord for the occupancy of a mobile home space.

A.R.S. § 33–1409(3), (22), and (28). Finally, appellees note that the Act requires a landlord to furnish a statement of policy of the mobile home park before the parties execute a rental agreement. § 33–1436(A). The statement must inform the tenant of the park's classification as a family community or a housing community for older persons; the period of time before changes in use are expected; the method used for determining rent changes, if any; whether tenants have a right of first refusal upon sale of the park; the size and other specifications of mobile homes permitted in the park; and "[t]he improvements required as a condition of tenancy." A.R.S. § 33–1436(B).

We find appellees' citations of little assistance, however, in view of the history of the Act and its amendments. As we noted above, subpart (D)(6) has been part of the Act since its adoption in 1975. At that time, "tenant" was defined as "a person entitled under a rental agreement to occupy a mobile home space to the exclusion of others." 1975 Ariz.Sess.Laws ch. 142, § 1. That definition is now assigned to the term "resident." § 33–1409(26). Neither "appurtenances" nor "prospective tenant" was defined in the original version. In addition, neither § 33–1413(J) nor § 33–1436 was a part of the Act until 1987. Although portions of the sub-

parts of § 33–1452(D) have been reworded over the years and two subparts have been added, the language of (D)(6) has not changed except for the addition of three articles (two "a's" and a "the").

When we read (D)(6) in conjunction with the other six subparts of § 33–1452(D), we must reject appellees' construction. There is simply no support in any of the language for their contention that (D)(6) was intended to apply only to tenants who were residents of a mobile home park in 1975, especially in light of the savings clause the legislature enacted at the time it adopted the Act, which reads as follows:

Transactions entered into before the effective date of this act, and not extended or renewed after that date and the rights, duties and interests flowing from them remain valid and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by this act as though the repeal or amendment has not occurred.

1975 Ariz.Sess.Laws ch. 142, § 2. Indeed, the language of the savings clause directly contradicts appellees' contention.

Moreover, the provision that permits a prospective tenant to be required to make improvements to the mobile home, § 33–1413(J), and the provision that the statement of policy must include the improvements the tenant is required to make, § 33–1436(B), are not in conflict with § 33–1452(D)(6). That subpart refers to "permanent improvements" whereas the other sections refer simply to "improvements." The provisions can thus be construed in harmony, which we are required to do in interpreting a statute. *Chaffin.*

In addition to a lengthy history of the industry, amicus curiae the Arizona Mobile Housing Association, Inc. (AMHA) argues that § 33–1452(D)(6) was intended to prohibit landlords from imposing requirements on current tenants and insists that the requirements can be imposed upon prospective tenants so long as they are informed of the exact nature of the requirements. Because we have confined our ruling to existing tenants, we need not address whether it applies to prospective tenants.

The AMHA also argues that the trial court's interpretation of the statute will either cause mobile home parks to deteriorate or landlords will be required to pay for improvements, thus increasing rental rates. It notes as well that mobile homes are in fact not all that mobile, citing the comments of Justice O'Connor in *Yee v. City of Escondido,* —— U.S. ——, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). Any arguments about the hardships that might be created by the Act, however, must be addressed to the legislature. Our task is merely to interpret the provision according to the principles of statutory construction.

We also reject the AMHA's arguments detailing the statutory scheme in Florida. The language of the Florida statutes is not the same as Arizona's. Therefore, an analysis of its scheme does not assist us in determining the nature of our statutory scheme.

We conclude that the trial court correctly ruled that § 33–1452(D)(6) applies to appellants, who became tenants after the Act was adopted.

## STATUTE OF LIMITATIONS

■ Appellants entered into lease agreements with appellees on the following dates: the Guertins on June 1, 1987; the Kimballs on November 4, 1987; Frank Brogni on April 8, 1985; the Fletchers on December 1, 1986; the Oldhams on January 1, 1990; the Lauterbachs on February 23, 1988; and Gerald Mickel on February 3, 1987. The complaint naming the Guertins, the Kimballs, and Brogni was filed September 10, 1990, and the first amended complaint, which added the other appellants, was filed January 20, 1992.

In their appeal, appellants argue that the trial court erred in determining what triggers the statute of limitations in an action for a violation of the statute. The limitations period for a statutory violation is one year. A.R.S. § 12–541(3). The trial court determined that the statute begins to run at the

time a tenant expends funds to build or install improvements required by the landlord that are permanent in nature. The court ruled that the expenditure of such funds constitutes damage sufficient to commence the running of the limitations period.

Arguing that a statute of limitations defense is not favored, appellants contend that the limitations period for the statute in question does not begin to run until the rental agreement expires. We agree that the defense is not favored, *Continental Casualty Co. v. Grabe Brick Co.*, 1 Ariz.App. 214, 401 P.2d 168 (1965), and that, "where two constructions are possible, the one which gives the longer period of limitations is the one which is to be preferred." *O'Malley v. Sims*, 51 Ariz. 155, 165, 75 P.2d 50, 54–55 (1938). Nevertheless, the defense is a legitimate one, *id.*, and it precludes a cause of action if it is properly raised and found to apply. *Piper v. Salem*, 48 Ariz. 314, 61 P.2d 399 (1936). Moreover, in order to invoke the rule applying the longer of two possible periods, both statutory constructions must be reasonable. *Physical Therapy Associates v. Pinal County*, 154 Ariz. 405, 743 P.2d 1 (App.1987).

In arguing that the limitations period commences at the time the rental agreement expires, appellants have focused on the last phrase of subpart (6). A fair reading of all the subparts of subsection (D) reveals, however, that the operative word in each is the initial verb. In the case of subpart (6), that verb is "require." Therefore, under that portion of the statute, the statute is violated when a landlord imposes the requirement upon a tenant; a tenant suffers damages on which to sue at the time he or she pays for improvements furnished in accordance with the improper requirement. At that point, the statute of limitations begins to run. The final phrase of subpart (6) merely serves as part of the definition of what constitutes permanent improvements.

Appellants also contend that the statute cannot begin to run so long as damages are merely speculative. We agree that a plaintiff cannot sue until he or she has actually sustained damages. *Amfac Distribution Corp. v. Miller*, 138 Ariz. 152, 673 P.2d 792 (1983); *Tullar v. Walter L. Henderson, P.C.*, 168 Ariz. 577, 816 P.2d 234 (App.1991). Once a tenant pays for permanent improvements to the real property, however, damages sustained as a result of a violation of the statute are no longer speculative, and the cause of action accrues. The determination of what constitutes permanent improvements in violation of the statute is a fact question to be determined under existing real property principles. That factual issue is undisputed in this case.

We also find no merit to appellants' argument that the limitations period was tolled by the discovery rule. The discovery rule applies to actions based on tort claims or on contract claims "arising out of allegedly deficient design or construction of improvements to real estate." *Matusik v. Dorn*, 157 Ariz. 249, 251, 756 P.2d 346, 348 (App.1988). The basis for the rule, however, is that "[i]t would be unjust to require a person to bring an action for damages to either his person or property if he does not know or have reason to know the facts giving rise to the claim." *Id.* at 250, 756 P.2d at 347. Appellants do not claim that they either belatedly discovered, or by the exercise of reasonable diligence should have discovered, any facts on which their claim is based; instead, they contend only that they suffer no damages until the rental agreement expires. That argument is grounded on their interpretation of the statute, an interpretation we have rejected.

Finally, we disagree with appellants' contention that the court's ruling somehow creates perpetual leaseholds at Quail Ridge, thereby violating the public policy expressed in the statute. They contend that appellees have "effectively emasculated the entire concept of a mobile home park" by requiring tenants to install improvements that cannot be removed without damage. A conclusion that appellants' lawsuit was not timely filed does not detract from the public policy expressed in the statute, that a landlord cannot

require a tenant to install permanent improvements at a mobile home park.

We conclude that the trial court correctly found that the period of limitations had run before appellants commenced their lawsuit.

The parties are to bear their own attorney's fees on appeal.

DRUKE, P.J., and HATHAWAY, J., concur.