895 P.2d 115

**THIRD & CATALINA ASSOCIATES, Plaintiff–Appellant,**

v.

**CITY OF PHOENIX, a political subdivision of the State of Arizona, City of Phoenix City Council, and City of Phoenix Fire Department, Defendants–Appellees.**

No. 1 CA–CV 93–0337.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 18, 1994.

Review Denied May 23, 1995.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Christopher Robbins, Harding B. Cure, Troy B. Froderman, Phoenix, for plaintiff-appellant.

Roderick G. McDougall, City Atty. by Michael D. House, Asst. City Atty., Phoenix, for defendants-appellees.

## OPINION

GRANT, Presiding Judge.

In this appeal we are asked to decide whether a City of Phoenix ordinance [1] requiring the retrofitting of Third & Catalina Associates' building with sprinklers is unconstitutional as violating equal protection rights or as a taking without due process of law or just compensation. Third & Catalina Associates ("appellant") appeals from summary judgment of the trial court granted in favor of the

1. *See* Appendix A.

City, affirming the City's denial of appellant's requested relief.

## FACTS AND PROCEDURAL HISTORY

Appellant is the owner of the U.S. West Communications building on Third and Earll Streets in Phoenix, Arizona. The building is a ten-story glass and steel structure. Appellant originally contracted with The Mountain States Telephone and Telegraph Company ("Mountain States"), predecessor to U.S. West Communications, to erect two commercial buildings on the property. The first building was constructed in 1971 and 1972. Appellant and Mountain States entered into a thirty-year lease for the building that expires in the year 2003.

During the construction of the first building, the City required fire protection on the structural steel in the building before an occupancy permit could be issued. According to appellants, the only acceptable coating at that time contained ACMs (asbestos-containing materials). The building owners installed Monokote on the structural steel components of the building to satisfy the fire protection requirement. The Monokote used is an ACM. Once the Monokote had been applied on the structural steel, the City issued a building occupancy permit. After the erection of the first building, Mountain States elected not to erect the second commercial building on the premises. Mountain States (now U.S. West Communications) has been the sole tenant of appellant's building since 1973.

The sprinkler retrofit ordinance was enacted sixteen years after the construction of appellant's building, on July 22, 1987. The ordinance requires that all existing commercial high-rise buildings exceeding 75 feet in height be retrofitted with sprinkler systems. Phoenix City Council Ordinance No. 3037, Phoenix, Ariz. Fire Prevention Code § 28.40. Since 1976, sprinkler systems have been required in *all* new high-rise buildings.[2]

On March 4, 1990, appellant challenged the sprinkler ordinance and sought an exemption

or a major variance from the ordinance on the basis of the difficulties in retrofitting a building that contained ACMs. Following the Fire Marshal's denial of the relief requested appellant appealed under the City Code to the Phoenix Fire Chief. The Fire Chief denied the appeal and appellant then pursued its appeal to the Fire Safety Advisory Board. The Board also denied the appeal on April 4, 1991. Pursuant to Article 1, Section 1.2(h) of the Phoenix Fire Prevention Code[3], appellant appealed to the Phoenix City Council. The City Council denied relief on June 8, 1992. Appellant then filed an "appeal" with the superior court pursuant to the Phoenix Fire Prevention Code.

This "appeal" filed on July 6, 1992, in superior court is in the form of a complaint with three counts:

1. Section 28.40 of the Fire Prevention Code of the City of Phoenix ("the sprinkler retrofit ordinance"), as applied to appellant's building is an unconstitutional taking of property without just compensation in violation of the United States and Arizona constitutions.

2. The sprinkler retrofit ordinance violates the equal protection clauses of the United States and Arizona constitutions because it "exempts" residential high rise buildings from its scope.

3. The ordinance and enforcement of the ordinance violates the due process clauses of the United States and Arizona constitutions.

The complaint was designated "Complaint for Statutory Special Action."

The defendants/appellees, City of Phoenix, City of Phoenix City Council, and City of Phoenix Fire Department (collectively "City") filed an answer. The City then filed a motion for summary judgment raising both procedural and substantive defenses. By minute entry dated December 15, 1992, the trial court declined jurisdiction of the statutory special action and affirmed the City's denial of appellant's requested relief. By minute entry dated May 7, 1993, in ruling on appel-

---

2. Before 1976, 22 commercial high-rise buildings and 8 residential high-rise buildings were built without sprinklers in Phoenix.

3. *See* Appendix B. Both parties agree that the language in Appendix B controls for this appeal.

lant's motion for reconsideration, the trial court struck from the minute entry of December 15, 1992, the third paragraph in which the court declined jurisdiction of the statutory special action and the court signed a formal written order that had been submitted on January 15, 1993. The judgment was filed on April 30, 1993. This appeal was timely filed.

## ISSUES

1. Did appellant file a timely complaint within the statutory period following its effort to exhaust its administrative remedies in compliance with the Phoenix Fire Prevention Code?

2. Is the ordinance an unconstitutional taking of appellant's property without just compensation?

3. Has the City denied appellant procedural due process by denying it the right to a fair hearing?

4. Has the ordinance denied appellant equal protection by discriminating between commercial and residential high-rise buildings?

## DISCUSSION

### 1. Statute of Limitations.

■ The City argues that the appellant's claims are barred by the statute of limitations. At the outset we must recognize that the statute of limitations is not a favored defense. *Guertin v. Dixon*, 177 Ariz. 40, 864 P.2d 1072 (App.1993). An action challenging the constitutionality of an ordinance as applied to a particular property must be filed within four years of the date the ordinance was adopted. Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–550; *Ranch 57 v. City of Yuma*, 152 Ariz. 218, 731 P.2d 113 (App.1986). In a challenge to a zoning ordinance, the *Ranch 57* court applied a four-year statute of limitations which applies to actions other than for the recovery of real property for which no limitation is otherwise prescribed.

■ Since the ordinance in this case was adopted on July 22, 1987 and appellant's superior court complaint was not filed until July 6, 1992, the City's position is that the claims are time-barred. Appellant takes the position that it was required to exhaust administrative remedies before filing a cause of action in superior court based on the ordinance. Appellant claims that it followed the City's appeals procedure contained in Phoenix City Ordinance No. G–2922 to the letter and that the limitations period is tolled during the time a party exhausts administrative remedies. *Minor v. Cochise County*, 125 Ariz. 170, 172, 608 P.2d 309, 311 (1980).

The sprinkler ordinance required appellant to obtain fire department approval of a plan for compliance on or before February 1, 1988. The sprinkler ordinance also provides that after December 31, 1994, it shall be unlawful to maintain a building covered by the sprinkler requirement for human occupancy in which the work is not complete. Because appellant believed it was financially impossible to comply with the ordinance, appellant did not submit a complete plan. When the appellant did not timely submit a complete plan, the fire department requested that the City criminally prosecute the general manager of appellant. During the criminal proceeding, appellant filed for relief from the ordinance under Phoenix City Ordinance No. G–2922, Phoenix Ariz. Fire Prevention Code, article 1, § 1.2(h). According to appellant, the appellate process under the administrative procedure continued step-by-step as follows:

(1) Petition of Appeal to the Phoenix Fire Marshal (ruling dated May 4, 1990);

(2) Appeal to the Phoenix Fire Chief (ruling dated May 29, 1990);

(3) Appeal to the Phoenix Fire Safety Advisory Board (ruling dated April 4, 1992);

(4) Appeal to the Phoenix City Council (ruling dated June 3, 1992); and

(5) Complaint for statutory Special Action pursuant to Phoenix City Ordinance No. G–2922 (filed July 6, 1992).

Under the administrative appellate procedure, the last forum to address the issues is the superior court. Phoenix, Ariz. Fire Prevention Code art. 1 § 1.2(h)(e). Appellant claims that it took every step of the mandated appeal process in its attempt to receive an exemption or a variance. *See Hodel v. Virgi-*

*nia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 297, 101 S.Ct. 2352, 2371, 69 L.Ed.2d 1 (1981).

The reasons given by appellant for the requested variance or exemption were: hardship, impossibility of compliance, and the constitutional violations that would result by applying the ordinance in appellant's situation. The City responds that the regular Fire Prevention Code Appeals Procedure only authorizes the granting of a minor variance from Fire Prevention Code requirements and that since appellant sought a major variance or exemption, appellant was required to challenge the ordinance in superior court within four years of its enactment. We find this argument to be without merit given the elaborate and multiphase appellate procedure the City enacted and the exhaustion of remedies doctrine.

■ The rationale behind the exhaustion of remedies doctrine is to permit "an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to mute judicial controversies." *Estate of Bohn v. Waddell,* 174 Ariz. 239, 246, 848 P.2d 324, 331 (App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3000, 125 L.Ed.2d 693 (1993). Therefore, exhaustion of administrative remedies is of particular importance when the case raises constitutional issues. The administrative agency may decide in favor of the aggrieved party on other grounds, thus mooting the constitutional issue and relieving the courts of the need to decide it. If a plaintiff fails to exhaust administrative remedies it will be barred from appealing to the courts for relief. *Minor v. Cochise County,* 125 Ariz. at 171, 608 P.2d at 310 (1980); *Estate of Bohn v. Waddell.*

For the reasons stated we agree with the appellant that it properly exhausted its administrative remedies in full compliance with the law and public policy. The statute of limitations was tolled during this process. *Order of R.R. Telegraphers v. Railway Express Agency,* 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788 (1944); *Hosogai v. Kadota,* 145 Ariz. 227, 232, 700 P.2d 1327, 1332 (1985).

Therefore, appellant's complaint was timely filed.

**2. Unconstitutional taking without just compensation.**

■ The United States Supreme Court has recently stated:

The Takings Clause of the Fifth Amendment of the United States Constitution, made applicable to the States through the Fourteenth Amendment, *Chicago, B. & Q.R. Co. v. Chicago,* 166 U.S. 226, 239 [17 S.Ct. 581, 585, 41 L.Ed. 979] (1897), provides: "[N]or shall private property be taken for public use, without just compensation." One of the principal purposes of the Takings Clause is "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49 [80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554] (1960).

*Dolan v. City of Tigard,* —— U.S. ——, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (footnote omitted).

Appellant claims that it is financially impossible for it to comply with the ordinance as now written. Appellant states, and the City does not dispute, that appellant cannot retrofit its building with sprinklers without abating the ACMs in the building, due to OSHA regulations and hazards of asbestos, and that it cannot abate the ACMs except at financially ruinous cost. The asbestos is not a hazard if left undisturbed. There is no way to install sprinklers without disturbing the asbestos. According to appellant, the estimated cost for full abatement of the ACMs in order to install sprinklers is between $8 million and $10 million, as much or more than the building is worth. Appellant argues that its only reasonable option, if the ordinance is enforced, is to close the building to all human occupancy. To conduct partial abatement, through the incorporation of stud-wall mounted sprinkler systems, the cost would be approximately $3 million to $5 million. Appellant contends that the presence of ACMs makes it impossible to acquire the necessary financing to retrofit its building with sprinklers. Because of these financial

constraints brought about by the ordinance, appellant claims that it will be forced to bar any human use of the building, break its lease with U.S. West, give up any hope of profiting from its investment, suffer a $3.5 million financial loss because of the existing mortgage on the building, and demolish the building. For these reasons appellant takes the position that the ordinance denies it all economically viable use of the building.

Appellant relies on *Lucas v. South Carolina Coastal Council,* —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) in which the Supreme Court held that at least two categories of regulatory action will be deemed compensable without case-specific inquiry into the public interest advanced in support of the restraint. The first is a "physical invasion" of the property and the second is when regulation "denies all economically beneficial or productive use of land." *Lucas,* —— U.S. at ——, 112 S.Ct. at 2893; *accord Ranch 57,* 152 Ariz. at 226–27, 731 P.2d at 121–22.

■ In *Ranch 57,* the court held that a zoning ordinance constituted a taking of private property when restrictions deprived the owner of reasonable use for which the property is "adapted and thus destroys its economic value, or all but a bare residue of its value." 152 Ariz. at 226, 731 P.2d at 121. We view the present case as neither one that involves a physical invasion nor one which destroys the reasonable use for which the property is adapted. The City's sprinkler retrofit ordinance is not a land use regulation. The ordinance does not impose any restrictions on the use of the land. Rather, the ordinance is a fire safety regulation designed to protect human life. Compliance with the ordinance merely requires the expenditure of money, *not the giving up of* land. There is no taking. Furthermore, this is a cost to be borne by the owners of the building who derive profits from its rental and not a cost to be borne by the public at large which does not share in those potential profits. Requiring money to be spent to comply with a regulation is not an unconstitutional taking of private property.

This situation is unlike the Hillside Ordinance which we found to be an unconstitutional taking in *Corrigan v. City of Scottsdale,* 149 Ariz. 553, 720 P.2d 528 (App.1985), *aff'd in part, vacated in part,* 149 Ariz. 538, 720 P.2d 513 (1986), *cert. denied,* 479 U.S. 986, 107 S.Ct. 577, 93 L.Ed.2d 580 (1986). In *Corrigan* the ordinance could not be complied with by the mere expenditure of money; the land had to be effectively given up to the city for a public purpose.

We agree with the holding in *Queenside Hills Realty Co. v. Saxl,* 328 U.S. 80, 66 S.Ct. 850, 90 L.Ed. 1096 (1946), in which the Supreme Court rejected a similar challenge to a fire sprinkler retrofit requirement, stating:

> Many types of social legislation diminish the value of property which is regulated. The extreme cases are those where in the interest of public safety or welfare the owner is prohibited from using his property. We are dealing here with a less drastic measure. But in no case does the owner of property acquire immunity against the exercise of the police power because he constructed it in full compliance with the existing laws. The police power is one of the least limitable powers, and in its operation often cuts down property rights.

328 U.S. at 83, 66 S.Ct. at 851–52 (citations omitted).

■ Here we do not have a situation of private property being pressed into public service as in *Dolan v. City of Tigard; Lucas v. South Carolina Coastal Council;* or *Corrigan v. City of Scottsdale.* The City may legitimately exercise its police power by requiring existing buildings used for human habitation to meet reasonable health and safety standards in order to protect the occupants. Private property may even be destroyed by a City without compensation to the owner when the destruction is necessary to protect the public. *Moton v. City of Phoenix,* 100 Ariz. 23, 410 P.2d 93 (1966); *Southwest Eng'g Co. v. Ernst,* 79 Ariz. 403, 291 P.2d 764 (1955).

To require the City to compensate appellant in order to enforce its sprinkler retrofit ordinance would nullify the City's legitimate police power to protect its citizens from fire hazards. Such a ruling would have far-

reaching implications—such as preventing the City from ordering a property owner to vacate a structurally unsound building without paying the owner compensation to do so. That type of ruling would require the City to purchase property in order to enforce safety standards. Appellant has no property right to be exempt from fire safety laws. Merely requiring appellant to spend money to comply with the sprinkler retrofit ordinance does not take away any property right. We hold that the ordinance is not an unconstitutional taking.

### 3. Denial of procedural due process.

■ Appellant argues that the City never considered the costs and difficulties a property owner would have in retrofitting a building that contained ACMs. Appellant claims to have been denied a full and fair hearing on this issue, arguing that there was never any available cross-examination that could be afforded under the City's administrative procedures. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time in a meaningful manner. *Huck v. Haralambie*, 122 Ariz. 63, 65, 593 P.2d 286, 288 (1979); *Morrison v. Shanwick Int'l Corp.*, 167 Ariz. 39, 42, 804 P.2d 768, 771 (App.1990)." *Watahomigie v. Arizona Bd. of Water Quality Appeals*, 181 Ariz. 20, 887 P.2d 550 (App.1994). In the trial court, the City contended that appellant waived any opportunity for cross-examination of witnesses. The City admits that no cross-examination is available under the Phoenix City Code's appellate process until the aggrieved party reaches the superior court. However, the City states that appellant never requested the right to cross-examine witnesses and never complained about unsworn testimony during the administrative proceedings before the Fire Marshal, the Fire Chief, the Fire Safety Advisory Board, and the Phoenix City Council. Given the many proceedings in which appellant was involved, including those in superior court, we can find no violation of procedural due process on this record. *Watahomigie v. Arizona Bd. of Water Quality Appeals; Guertin v. Pinal County*, 178 Ariz. 610, 875 P.2d 843 (App.1994).

■ The appellant raised the issue of substantive due process for the first time on appeal. Since the issue was not raised or decided in the trial court we do not decide it here. *Schoenfelder v. Arizona Bank*, 165 Ariz. 79, 88, 796 P.2d 881, 890 (1990); *Resolution Trust Corp. v. City of Scottsdale*, 177 Ariz. 234, 866 P.2d 902 (App.1993).

### 4. Equal Protection.

■ Appellant claims that the ordinance violates the constitutional guarantee of equal protection by classifying and imposing a burden upon commercial high-rise buildings but exempting residential high-rise buildings. The City contends that appellant has the burden of proving the ordinance is unconstitutional because any ordinance is presumed to be valid. *Heller v. Doe by Doe*, —— U.S. ——, 113 S.Ct. 2637, 125 L.Ed.2d 257 (U.S. 1993); *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Watahomigie v. Arizona Bd. of Water Quality Appeals*, 181 Ariz. 20, 887 P.2d 550 (App.1994). The City claims that appellant was required to submit affidavits or other competent evidence to overcome the presumption of validity and it did not.

■ The record contains ample supporting reasons why the City could have rationally believed that a greater immediate need existed to require the retrofitting in commercial high-rise buildings. In its answer, the City states that commercial high-rise buildings utilize extensive open floor areas which facilitate the rapid spread of fire and smoke. Residential buildings are more compartmentalized. Unlike many residential high-rise buildings, commercial high-rise buildings tend to have central air-conditioning and ventilating systems which are conducive to increased circulation of smoke, toxic gas and flames throughout the structure. Commercial buildings have higher occupancy than residential buildings. Furthermore, underinclusiveness does not violate the equal protection clause. *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974); *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). The City

is treating all commercial high-rise buildings alike—they all must have sprinklers. If they were built after 1976 sprinklers were required as part of the initial construction; if they were built before 1976 they must be retrofitted for sprinklers. To grant appellant an exemption would result in unfair treatment to those buildings which have already complied with the sprinkler retrofit ordinance.

### 5. Conclusion.

For the reasons we have stated we hold that the ordinance as applied to appellant was not unconstitutional and we therefore affirm.

VOSS, J., concurs.

EHRLICH, Judge, specially concurring.

While I concur with the majority that the grant of summary judgment by the trial court was appropriate, I believe that Third & Catalina's constitutional claims are time-barred. I therefore would not reach their merits. *E.g., Patterson v. Maricopa County Sheriff's Office,* 177 Ariz. 153, 159, 865 P.2d 814, 820 (App.1993) (court will avoid constitutional questions when other legal principles are controlling).

When the Phoenix City Council enacted the ordinance requiring all commercial high-rise buildings to install fire sprinklers, 22 buildings were affected, including the building owned by Third & Catalina Associates. The ordinance provided that the building owners were to submit a plan for compliance and a schedule for completion by February 1, 1988, and that all work on the installation was to be completed by December 31, 1994. Third & Catalina requested and received a 45-day variance to extend the time to submit its plan until March 15, 1988. It then submitted an apparently incomplete plan, which was rejected. It subsequently took no further action to comply or to challenge either the rejection of its plan or the ordinance for two years. Only after a criminal prosecution was initiated against Third & Catalina for its failure to comply did the company initiate an administrative challenge to the application of the ordinance to its building.

In March 1990, Third & Catalina requested a "modification, variance or amendment" of the ordinance from the fire marshal, claiming that installation of a sprinkler system would be cost prohibitive. It stated that, in order to install a system, it would first have to abate the asbestos in the building and that the costs involved would render the building valueless.[4] In a statement of "Unnecessary Personal Hardship," Third & Catalina asked the fire marshal that it be granted relief from the requirements of the ordinance, in other words, a total exemption.

The fire marshal denied the request. Third & Catalina appealed this decision to the fire chief, who upheld the fire marshal, and then to the Fire Safety Advisory Board. The Board allowed Third & Catalina several months to try to work out an acceptable plan with the Fire Department, but when none was forthcoming, it also affirmed the determination of the fire marshal. Third & Catalina then appealed to the Phoenix City Council, which unanimously determined that the evidence supported the prior administrative determinations, and therefore upheld the denial of an exemption for Third & Catalina's building. Third & Catalina finally filed a complaint in the trial court challenging the constitutionality of the ordinance.

The ordinance was enacted on July 22, 1987; the complaint was filed almost five years later, on July 6, 1992. There exists a four-year statute of limitations, Ariz.Rev. Stat.Ann. section 12–550; *Ranch 57 v. City of Yuma,* 152 Ariz. 218, 731 P.2d 113 (App. 1986), and so the issue is whether the running of the statute was tolled while an administrative redress was sought. I think not. The requested variance from the City of Phoenix Fire Prevention Code could not in any sense have been considered "minor," the only type of variance available, and the constitutional issues never could have been resolved by the city's administrative bodies but only by the courts. In neither circumstance could there have been an administrative remedy. Therefore, no administrative remedy

---

4. Third & Catalina originally had chosen asbestos-containing Monokote fire retardant rather than the asbestos-free but more expensive alternatives of concrete or gypsum board.

need have been pursued and its pursuit thus could not have served to toll the running of the statute. In fact, the record gives the impression that delay until the lease expires in 2003 is the strategy.

Pursuant to Article 1, section 1.2(h)(a) of the City of Phoenix Fire Prevention Code ("Fire Code"), the fire marshal only is authorized to grant "a minor variance" to a party demonstrating that a Fire Code provision causes "an unnecessary personal hardship substantially limiting the preservation and enjoyment of property rights." Such a minor variance may not be granted if it would be materially detrimental to persons working in the vicinity or to public welfare in general, or if the variance is not in harmony with the Fire Code's purpose of safeguarding life and property from fire. *See* Fire Code, Art. 1, sec. 1.2(h). The fire marshal's determination regarding a minor variance may be appealed to the fire chief, the Fire Safety Advisory Board, the city council and finally to the courts. *Id.*

In interpreting an ordinance or statute, we give words their ordinary or plain meaning, and we should not render words superfluous or insignificant by our interpretation. *See, e.g., Arnold v. Arizona Department of Health Services,* 160 Ariz. 593, 603, 775 P.2d 521, 531 (1989); *Patterson,* 177 Ariz. at 156, 865 P.2d at 817. The drafters of the Fire Code specifically included the word "minor" in describing the type of variance that is subject to administrative review. This word has been defined as indicating a lesser size, extent or importance. *See, e.g., Random House Dictionary of the English Language,* 2d ed., Unabridged (1987); *Webster's New Universal Unabridged Dictionary,* 2d ed. (1983). Therefore, a minor variance would be a variance of little importance or extent, essentially one that would not alter or interfere with the ultimate purpose of the Fire Code. For example, a 45–day extension of time to submit an initial plan of compliance, such as the one sought by and granted to Third & Catalina in 1988, would be a minor variance from the Fire Code. However, the relief requested by Third & Catalina in 1990, essentially a total exemption from the city's sprinkler requirements, can in no way be construed as a minor variance; it is directly contrary to the purpose of the Fire Code. In fact, counsel for Third & Catalina acknowledged at oral argument that the relief requested was indeed "substantial."

Moreover, it is apparent from the record that Third & Catalina was on notice at the instigation of and throughout the administrative proceedings that it could not be granted relief of the type and extent it sought. At the fire marshal's hearing on May 4, 1990, Third & Catalina's counsel was told that the fire marshal only has authority "to provide some *minor* relief when it comes to code issues. And to state that you want relief from the total requirement of sprinklers in a building, *that is not a minor variance* from the code...." (Emphasis added.) Thus, because it is not minor, the type of variance requested by Third & Catalina—an exemption from the requirement that it install sprinklers in its building—is not even available under the Fire Code. Granting such relief would not only have been materially detrimental to both the persons working in or near the building and the general public welfare due to the increased risk of injury or death in the event of a fire, but it also would not have been in harmony with the protective purpose of the Fire Code. Nevertheless, Third & Catalina continued to pursue a non-existent administrative remedy.

There is also an inconsistency in Third & Catalina's argument regarding exhaustion of its administrative remedies. Generally, a party must exhaust its available administrative remedies in order to permit the appropriate administrative agency to make a factual record and apply its expertise to the particular situation. *E.g., Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 817, 31 L.Ed.2d 17 (1972). However, there is a well-settled exception to this requirement; in a situation when the pursuit of an administrative remedy would be useless or futile under the circumstances, a party may bypass the administrative process altogether and bring its grievances directly to the trial court. *Minor v. Cochise County,* 125 Ariz. 170, 172, 608 P.2d 309, 311 (1980); *Estate of Bohn v. Waddell,* 174 Ariz. 239, 248, 848 P.2d 324, 333 (App. 1992).

Third & Catalina claims that it wanted to pursue the administrative remedies available under the Fire Code, and that it was entitled to do so. However, Third & Catalina also claims that the administrative remedy was inadequate because it deprived Third & Catalina of constitutional due process in various ways, including that the hearings were not fair, that the administrative bodies never realistically considered its claims but only reviewed whether the prior bodies had sufficient evidence to support their determinations, that the process did not provide for full cross-examination of witnesses, and that it was not permitted enough time to present its grievances before the bodies. Third & Catalina in fact voiced its frustration with the administrative system during the entire process. These claims all point to the inescapable conclusion that, although going through the administrative process, Third & Catalina knew that it was inadequate to address the company's concerns. With this cognizance, Third & Catalina should have proceeded to the trial court to contest the application of the ordinance under the exception to the rule of exhaustion. Indeed, it could have approached the court with its constitutional challenge contemporaneously with its insistent pursuit of administrative relief on the basis of hardship if only to present the constitutional issues to the appropriate tribunal for resolution and to avoid the running of the statute of limitation. It did not.

For the foregoing reasons, I do not believe that the statute of limitation was tolled during Third & Catalina's foray into the administrative process.

## APPENDIX A

City of Phoenix, Arizona
**FIRE PREVENTION CODE**
* SECTION 28.40  FIRE PROTECTION—EXISTING HIGH–RISE BUILDINGS

All commercial buildings having floors used for human occupancy located more than 75 feet above the grade at the lowest level of Fire Department vehicle access shall be protected throughout by an approved automatic sprinkler system installed in accordance with Section 14.4 of this Code.

All work required by this section shall be completed on, or before, December 31, 1994.

On or before February 1, 1988, the commercial building owners and/or representatives shall provide the Division of Fire Prevention with a formulated plan for compliance and a schedule for completion of the work required herein. The completion schedule shall indicate the work to be accomplished in each year and shall include benchmarks for specific work to be completed by December 31, 1990 and December 31, 1992 with work to be complete by December 31, 1994.

The priority within the first phase shall be to provide automatic sprinkler protection to all hazardous areas of each high-rise commercial building as determined by the Fire Department.

The formulated plan shall be subject to review and approval by the Division of Fire Prevention. Work shall be reviewed for compliance with the approved schedule. After December 31, 1994, it shall be unlawful for any person, firm, or corporation to maintain or permit to be maintained a commercial building for human occupancy in which work is not complete.

* Added July 22, 1987, Ord. # 3037. City of Phoenix, Arizona Fire Prevention Code.

## APPENDIX B

City of Phoenix, Arizona
**FIRE PREVENTION CODE**
ARTICLE 1, SECTION 1.2(h). APPEALS PROCEDURE.

(a) FIRE MARSHAL. The Fire Marshal or his designee may grant a minor variance to this code or ordinance provisions and amendments relating thereto when there exists an unnecessary personal hardship substantially limiting the preservation and enjoyment of property rights and resulting from a liberal interpretation of this Code or ordinance provisions and amendments relating thereto. This minor variance shall not be authorized unless it is found that:

(1) Authorizing of the minor variance is necessary for the preservation and enjoyment of substantial property rights; and

(2) Authorizing of the minor variance will not be materially detrimental or hazardous to the persons residing or working in the vicinity, to adjacent property, to the neighborhood, or the public welfare in general; and

(3) Granting of the minor variance will be in harmony with the purposes sought to be attained by this code or ordinance provisions and amendments relating thereto.

(b) CHIEF OF THE FIRE DEPARTMENT. Any person who claims that he has been aggrieved by the decision of the Fire Marshal may appeal to the Chief of the Fire Department or his designee within five (5) working days following the decision of the Fire Marshal.

(c) FIRE SAFETY ADVISORY BOARD. Any person may appeal from a decision of the Chief of the Fire Department to the Fire Safety Advisory Board when it is claimed that any one or more of the following conditions exists:

(1) The true intent of the Codes or ordinances described in this Code has been incorrectly interpreted; or

(2) The provisions of the Codes or ordinances do not fully apply; or

(3) A decision is unreasonable or arbitrary as it applies to alternates or new materials.

The applicant shall accompany his written appeal to the Fire Safety Advisory Board with a fee of $50, except that if the appeal is made by the owner of and pertains to a single family residence, the fee shall be $25. The Chief of the Fire Department shall deposit said sum in the general fund of the City.

(d) CITY COUNCIL. If the Fire Safety Advisory Board is dissatisfied with the decision of the Chief of the Fire Department after a hearing and recommendation by the Board, the Board may then appeal to the City Council whose decision shall be final.

If any person is dissatisfied with the final decision of the Chief of the Fire Department after hearing and recommendation by the Board, the Board may then appeal the Fire Chief's decision to the City Council whose decision shall be final.

Following a hearing and recommendation by the Fire Safety Advisory Board, any person dissatisfied with the decision of the Board may then appeal to the City Council. An appeal to the City Council shall be made within ten (10) working days of the Fire Safety Advisory Board hearing. The time-frames stated above may be modified upon the showing of good cause.

(e) COURT REVIEW. Any persons aggrieved by a decision of the City Council, may at any time within 30 days after the filing of the City Council's decision in the office of the Chief of the Fire Department, file an appeal with the Superior Court of the County by following the various methods of appeal or review procedures in Arizona as set forth by the applicable statutes of the State of Arizona.