NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

HV & CANAL LLC, *Plaintiff/Appellant*,

*v.*

ARIZONA DEPARTMENT OF TRANSPORTATION, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 22-0771
FILED 2-13-2024

---

Appeal from the Superior Court in Maricopa County
No.  CV2019-009886
The Honorable Katherine Cooper, Judge

**AFFIRMED**

---

COUNSEL

Berry Riddell LLC, Scottsdale
By Jeffrey D. Gross, Martin A. Aronson
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Michelle Burton, Joe Acosta, Jr.
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

---

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Anni Hill Foster joined.

---

**C A M P B E L L**, Judge:

¶1      A.R.S. § 41-1030(B) authorizes agencies to impose licensing requirements or conditions only when "specifically authorized" by statute or rule. Here, we hold that A.A.C. R17-3-506 and other regulations specifically authorized the Arizona Department of Transportation (ADOT) to condition an encroachment permit on the applicant, HV & Canal LLC (HVC), building and paying for a right-hand-turn lane into its property. We also hold that, even if the condition was a taking within the meaning of the Fifth Amendment, it was not unconstitutional. We affirm the superior court's entry of judgment for ADOT.

## BACKGROUND

¶2      This case involves a nine-acre parcel of commercial property (the Property) abutting State Route 179 near Sedona. For decades, the Property was used as an outlet mall with one main access point from the state route authorized under an ADOT encroachment permit.

¶3      Beginning in 2008, ADOT undertook a major improvement project on the state route. The project included the addition of a roundabout preceding the access to the Property, as well as a raised median in the center of the roadway eliminating all left-hand turns in and out of the Property. Though the changes increased right-hand turns into the Property, ADOT did not install a right-hand-turn lane at the access point as part of the improvements.

¶4      Nine years later, an HVC affiliate bought the Property intending to replace the northernmost retail buildings with a hotel. The project proceeded with the county approving a lot split, issuing building permits, and granting certificates of occupancy. A third-party company now owns and operates a hotel on the northern three-acre lot, and HVC operates retail space on the remaining six acres.

¶5      The redevelopment of the Property did not change its state-route access point. But HVC had to seek a new encroachment permit

under ADOT regulations, which require a new application upon changed ownership or use. *See* A.A.C. R17-3-502(D), R17-3-504(C)(9). As part of that process, ADOT required a traffic-impact analysis to assess the need for a right-hand-turn lane. The engineer who completed the analysis concluded that though ADOT's internal guidelines—which ADOT concedes are not regulations or rules—would require a right-hand-turn lane, "[d]ue to the *decrease* in trips generated by the proposed development and the minimal improvement of the LOS [Level of Service] delay [that a right-hand-turn lane would provide], it is recommended that the SR 179 geometry remain unchanged." (Emphasis added.) But ADOT rejected the engineer's conclusion in favor of following its guidelines. ADOT indicated that the guidelines represent current safety standards, and that though ADOT does not require landowners to make improvements each time safety standards are updated, current standards are applied when a new encroachment permit is requested. ADOT therefore conditioned the issuance of HVC's requested encroachment permit on HVC building a right-hand-turn lane at its expense.

¶6 HVC sued ADOT for declaratory and mandamus relief. The superior court denied the parties' cross-motions for summary judgment. This court and later the supreme court declined to decide HVC's requests for special-action relief. The matter proceeded to a bench trial. The superior court determined that the permit condition was both statutorily authorized and constitutionally proportional to the impact of the Property's redevelopment. The superior court therefore ruled in favor of ADOT and entered judgment accordingly. HVC appealed.

## DISCUSSION

### I. Statutory Authority

¶7 HVC first contends that ADOT acted in violation of statute. ADOT, created by and operating under the authority granted by the legislature, has exclusive control and jurisdiction over state routes and is charged with their operation and maintenance. A.R.S. § 28-332(A), (B)(3). ADOT must administer all maintenance and construction work on state routes and may "[e]xercise other powers necessary to carry out the work of the division and perform other duties prescribed by law for the division." A.R.S. § 28-7053(A)(2), (D)(2); A.R.S. § 28-6922(A), (B)(6); A.A.C. R17-3-505. ADOT's director "shall exercise complete and exclusive operational control and jurisdiction over the use of state highways and routes and adopt rules regarding the use as the director deems necessary to prevent the abuse and

unauthorized use of these highways and routes," and to promote other goals, including "[p]ublic safety and convenience." A.R.S. §§ 28-7045, -366.

¶8        ADOT's authority is limited to what is statutorily permitted. *See* A.R.S. §§ 28-331 (establishing ADOT), 41-1001(1) (defining agencies); *Facilitec, Inc. v. Hibbs*, 206 Ariz. 486, 488, ¶ 10 (2003) (holding that because agencies are creatures of statute, they have no powers beyond those delegated by the legislature). ADOT's director may allow encroachments after considering their impact on traffic safety and other factors. A.A.C. R17-3-506.

¶9        Here, we address whether ADOT exceeded its statutory authority by conditioning HVC's encroachment permit on HVC constructing and paying for a right-hand-turn lane.[1] We review all relevant statutes and regulations de novo, *Libra Group, Inc. v. State*, 167 Ariz. 176, 179 (App. 1991), interpreting them in accordance with their plain language by giving effect to each sentence and word, *Home Depot USA, Inc. v. Ariz. Dep't of Revenue*, 230 Ariz. 498, 500, ¶ 10 (App. 2012).

¶10       When dealing with state agencies, the legislature sought to ensure the public would enjoy "fair and open" regulation by adopting a Regulatory Bill of Rights in A.R.S. § 41-1001.01. Subsection (A)(7) of that statute prohibits state agencies from basing licensing decisions in whole or in part on conditions or requirements "not specifically authorized by statute, rule or state tribal gaming compact as provided in § 41-1030, subsection B." A.R.S. § 41-1030(B) was first adopted in 1995 and was modified to its current form three years later, at the same time the Regulatory Bill of Rights was put into place. *See* 1995 Ariz. Sess. Laws, ch. 251, § 5 (1st Reg. Sess.) (adding first sentence of current subsection but using term "expressly authorized"); 1998 Ariz. Sess. Laws, ch. 57, § 36 (2d Reg. Sess.) (replacing "expressly authorized" with "specifically authorized" in first sentence and adding second sentence); 1998 Ariz. Sess. Laws, ch. 57, § 18 (2d Reg. Sess.) (enacting A.R.S. § 41-1001.01). A.R.S. § 41-1030(B) provides:

---

[1]    The parties do not dispute that the Property's access point encroaches on the state route within the meaning of A.R.S. § 28-7053(E), that the Property's changed ownership and use required HVC to seek a new encroachment permit under A.A.C. R17-3-502(D) and R17-3-504(C)(9), and that A.R.S. § 41-1030(B) applied to ADOT's permit-issuance decision as an agency making a licensing decision within the meanings of A.R.S. § 41-1001(1), (13), and (15).

An agency shall not base a licensing decision in whole or in part on a licensing requirement or condition that is not *specifically authorized* by statute, rule or state tribal gaming compact. A general grant of authority in statute does not constitute a basis for imposing a licensing requirement or condition unless a rule is made pursuant to that general grant of authority that *specifically authorizes* the requirement or condition.

(Emphases added.)

¶11       Given A.R.S. §§ 41-1001.01(A)(7) and -1030(B), we must determine whether ADOT was given a "specific" or "general" grant of authority by the legislature.

## A.       General Versus Specific Grant of Authority

¶12       To begin, we consider the difference between "specific" and "general" grants of authority. We are unaware of any case law defining the difference between the two grants of authority in the context of A.R.S. §§ 41-1001.01(A)(7) and -1030(B), but we find guidance in case law predating those statutes.[2]

¶13       Several cases have distinguished "general" from "specific" authority. In *Gardenhire v. State*, our supreme court characterized an ordinance authorizing a town "[t]o do all other acts, and prescribe all other regulations, which may be necessary or expedient for the prevention or suppression of disease" as a "sweeping grant of power," while characterizing other ordinances authorizing the adoption of enumerated disease-prevention measures as giving "specific authority" that did not preclude alternative action under the general ordinance. 26 Ariz. 14, 17–18 (1923). In *Merrick v. Rottman*, by contrast, this court concluded that a legislative act's expression of particular "specific enforcement powers" for an agency precluded any implied power to take alternative actions despite a statute giving the agency a "general grant of authority" to administer and ensure compliance with the act. 135 Ariz. 594, 598 (App. 1983).

¶14       We also note that our supreme court has drawn similar distinctions between "general" and "express" authority, defining express authority as that which is "given in direct terms, definitely and explicitly,"

---

2    We do not rely on ADOT's citation to *Sullivan v. Planning Board of Acton*, 645 N.E.2d 703 (Mass. Ct. App. 1995), because we find ample direction in the Arizona cases.

and which "confers powers to do a particular thing set forth and declared exactly, plainly and directly with well defined limits"—rather than "authority that is general, implied, or not directly stated or given." *City of Flagstaff v. Assoc. Dairy Prods. Co.*, 75 Ariz. 254, 257 (1953) (citations omitted). A.R.S. § 41-1030(B) referred to "expressly authorized" instead of "specifically authorized" until 1998, when that statute's second sentence and A.R.S. § 41-1001.01(A)(7) were added. *See* 1998 Ariz. Sess. Laws, ch. 57, §§ 18, 36 (2d Reg. Sess.). We do not presume that the changed language disrupted the meaning because to do so would be to ignore the statutes' express purpose, as confirmed by the other concurrent amendments. *See State v. Lammie*, 164 Ariz. 377, 379 (App. 1990) ("While it is true that when the legislature amends statutory language, it is presumed that it intends to make a change in existing law, a statutory amendment ought not to be interpreted so broadly as to destroy the entire objective of the statutory scheme.").

**¶15**        Relying on the foregoing and the statutory goal of ensuring fair and open regulation,[3] we hold that, in the context of A.R.S. §§ 41-1001.01(A)(7) and -1030(B), a "general grant of authority" exists where the agency is given broad discretion to determine how it will act, while a "specific authoriz[ation]" exists where the agency may choose from a menu of possible actions.

### B.        ADOT's Specific Grant of Authority

**¶16**        We next decide whether ADOT was specifically authorized by statute or rule to condition HVC's encroachment permit on the applicant building and paying for a right-hand-turn lane. We hold that though no statute specifically authorized ADOT's action, ADOT appropriately enacted rules under its general statutory authority (*see supra* at ¶¶ 8–9) that *did* provide specific authority: A.A.C. R17-3-504 to -507.

**¶17**        A.A.C. R17-3-505 and -506 provide that ADOT may impose permit conditions after reviewing documentation "to analyze the proposed encroachment's impact on the state highway and right-of-way." A.A.C. R17-3-507(C)–(D) provides that ADOT will approve permits only where the applicant agrees to comply with those conditions. A.A.C. R17-3-504(c) provides that the applicant "[a]ssume[s] *all* legal liability and financial responsibility for the encroachment activity for the duration of the permit."

---

3        ADOT's adoption of regulations requires public notice and a hearing process under Title 41, Chapter 6, Article 3 of the Arizona Revised Statutes.

(Emphasis added.) Most important here is A.A.C. R17-3-506, which provides:

> C. An encroachment permit consists of the materials submitted by an applicant under R17-3-504 and R17-3-505, and additional requirements from the Department as described in subsection (B). An encroachment permit will list in detail the requirements with which the permittee shall comply in order to perform the requested encroaching activity. Others are specific to a particular encroachment activity.

> D. The Department shall set encroachment permit requirements to:

>> 1. Maintain the integrity of the Department's right-of-way and transportation facilities;

>> 2. Mitigate the risk to traffic safety;

>> 3. Improve traffic movement, efficiency, and capacity;

>> 4. Mitigate adverse drainage on state property or abutting property affecting state property;

>> 5. Mitigate environmental impacts; Mitigate maintenance costs to transportation facilities;

>> 6. Mitigate potential liability for the Department or the state; and

>> 7. Mitigate potential harms to national or state security.

> E. By accepting an encroachment permit, a permittee agrees to the requirements described in the permit. If the permittee disagrees with the requirements, the permittee shall return the permit immediately to the District Office.

By its terms, A.A.C. R6-3-506 does not create sweeping powers, but rather limits ADOT's authority to the imposition of requirements that serve the listed goals. To be sure, the regulation does not list every potential mechanism that ADOT may employ to achieve the stated goals. But requiring it to do so would be inefficient and impracticable given that each permit application implicates a myriad of unique variables. *See Ariz. Corp. Comm'n v. Palm Springs Utility Corp.*, 24 Ariz. App. 124, 128–29 (1975) (observing that specialized case-by-case orders not expressly or impliedly

prohibited by statute promoted statute's effective administration). Because ADOT is limited to selecting mechanisms that promote the enumerated goals, we conclude that the regulation confers specific rather than general authority.

**¶18**        The requirements that ADOT imposed on HVC receiving an encroachment permit fell squarely within the bounds of the specific authority codified in A.A.C. R17-3-504 to -507 consistent with ADOT's general statutory powers. The regulations authorize ADOT to impose conditions that mitigate traffic-safety risks, mitigate potential liability for ADOT and the state, and improve traffic movement, efficiency, and capacity. A.A.C. R17-3-506(B)(2), (3), (7). A condition requiring the applicant to create a right-hand-turn lane is directed to those purposes. And A.A.C R17-3-504(c) allows the cost of construction of this traffic safety feature to be apportioned to the applicant. Based on the statutory authority granted ADOT by the legislature and the regulations adopted by the agency, we find the requirements imposed for the issuance of the encroachment permit to be duly authorized and not violative of A.R.S. §§ 41-1001.01(A)(7) or -1030(B).

## II.    Constitutionality

**¶19**        HVC next contends that the right-hand-turn-lane condition—which a HVC representative estimated would cost the company at least $150,000—was an unconstitutional taking.

**¶20**        The Fifth Amendment, which applies to the states through the Fourteenth Amendment, provides that private property shall not be taken for public use without just compensation. U.S. Const. amends. V, XIV. Land is taken within the meaning of the Fifth Amendment when it is physically appropriated or when the owner is deprived of beneficial use. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015–16 (1994). A taking also occurs when the government demands a fee in lieu of a physical invasion. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 612 (2013). In the context of land use and development permits, whether there is an unconstitutional taking is determined under the "*Nollan/Dolan* test." *Id.* at 595, 604 (referring to *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994)); *see also Am. Furniture Warehouse Co. v. Town of Gilbert*, 245 Ariz. 156, 160, ¶ 17 (App. 2018). The *Nollan/Dolan* test applies when the government makes case-specific adjudicative decisions implicating any form of taking. *Home Builders Ass'n of Cent. Ariz. v. City of Scottsdale*, 187 Ariz. 479, 486 (1997); *Am. Furniture Warehouse*, 245 Ariz. at 163, ¶ 27. Under this test, the Fifth Amendment is not violated "so long as

there is a 'nexus' and 'rough proportionality' between the property [or monetary exaction] that the government demands and the social costs of the applicant's proposal." *Koontz*, 570 U.S. at 605–06. "Rough proportionality" does not require a precise mathematical calculation, but "the [government] must make some sort of individualized determination that the required dedication [or monetary exaction] is related both in nature and extent to the impact of the proposed development." *Dolan*, 512 U.S. at 391; *see also Transamerica Title Ins. Co. v. City of Tucson*, 23 Ariz. App. 385, 386, 390–91 (1975) (pre-*Nollan/Dolan* test case finding an unconstitutional taking where city conditioned rezoning on dedication of land for additional right-of-way but there was no evidence the rezoning would cause appreciable extra burden).

**¶21**        Assuming without deciding that the condition here implicated application of the *Nollan/Dolan* test,[4] we find no error in the superior court's determination that the test was satisfied. On the date HVC submitted its permit application, the conditions—specifically, the right-hand-turn-only access to the Property immediately following a roundabout out of which non-turning vehicles may be accelerating—justified installation of a right-hand-turn lane under ADOT's internal guidelines regardless of the Property's re-development. Given the foregoing, there was a nexus between safety and traffic concerns and the requirement that HVC install a right-hand-turn lane. The requirement was not only statutorily authorized, but also was related in nature and extent to the proposed encroachment's impact.

**¶22**        We are troubled by ADOT's role in creating the problematic conditions by changing the roadway in 2008 without simultaneously building (at state expense) a right-hand-turn lane into the Property. We also are troubled by ADOT's representations at oral argument on appeal that it may at any time revoke an encroachment permit and require the landowner to assume the burden of updated safety guidelines made applicable by ADOT's own conduct. But because a new permit was required here upon

---

4        ADOT relies on *Third & Catalina Assocs. v. City of Phoenix*, 182 Ariz. 203 (App. 1994), to argue that the *Nollan/Dolan* test does not apply. In that case, we upheld the constitutionality of a city ordinance requiring a property owner to retrofit an existing high-rise building with a sprinkler system. *Id.* at 205, 210. We held that the financial outlay required for compliance was not an unconstitutional taking, noting that the property was not being pressed into public service and that the city was acting to protect human life within the scope of its police power. *Id.* at 208–09.

the change of ownership and use, ADOT was entitled to impose the updated safety regulations and require the construction of a right-hand-turn lane. Therefore, we cannot say that ADOT acted beyond the scope of its statutory authority or the constitution by requiring HVC to shoulder the responsibility of its proposed encroachment's impact when it applied for the new permit.

## CONCLUSION

¶23 We affirm the judgment for ADOT for the reasons set forth above. We deny HVC's request for attorneys' fees under A.R.S. §§ 12-2030 and 41-1030.



AMY M. WOOD • Clerk of the Court
FILED: AA